Parkhill's Administrators *vs.* The Union Bank of Florida.

MARTHA ANN MANLY, ADMINISTRATRIX, AND HIRAM MANLY, AD-
MINISTOR IN RIGHT OF HIS WIFE, OF SAMUEL PARKHILL DE-
CEASED, *vs.* THE UNION BANK OF FLORIDA.

AT common law, a plea *puis darrein continuance*, waived all former pleas, but
a Statute of this State, has altered the rule, and such a consequence does
not follow the filing of that plea, here:

A Administratrix of B, was sued in that capacity; pending the suit, she was
removed from the Administration on the petition of the plaintiff in the suit.
Afterwards A, C and D, were appointed administratrix and administrators *de
bonis non;* The suit still pending, and no steps having been taken to make
her a party as administratrix *de bonis non*, A pleaded in bar, that since the
last continuance she had been removed from the administration by competent
and proper authority, and that all the assetts which came to her hands as
administratrix of B, had been taken out of her possession, and that she did
not and could not retain sufficient to pay plaintiffs claim; held, that it was
well pleaded, and that the fact might have been pleaded either in abate-
ment or in bar.

The fact of A's removal from the administration, constituted a complete bar to
the action, and the fact that she was afterwards appointed administratrix *de
bonis non*, does not alter the case; A as administratrix, and A as administra-
trix *de bonis non*, being in the eye of the law, separate and distinct charac-
ters.

A replication to the plea *puis darrein continuance* setting out that A had been
dismissed from the administration, and that she had, under an order of Court,
turned over to a receiver, who took charge of the same, all the property
which came to her hands as administratrix, and remained unadministered at
the time of her removal; but that she had afterwards, and before the filing of
the plea, been appointed an administratrix *de bonis non*, and the property
recommitted to her, renders the allegation, in the plea *puis darrein contin-
uance* of having fully administered, superfluous. Such a replication was
*a departure* from the declaration and therefore defective.

On demurrer, the Court will give judgement for the party who on the whole
case appears entitled to it, and against the party who committed the first er-
ror.

THIS case came up by Writ of Error to Leon Circuit Court.

This is an action of debt commenced April 10, 1843, against
Martha Ann Parkhill Administratrix, &c.; and which was tried and
determined, March 1845, in the late Superior Court of the Territo-
ry of Florida. The following is the cause of action on which the
suit was instituted:

TALLAHASSEE, December 9th, 1840.

Dolls. 94,182 22-100.

Six months after date I promise to pay to the Union Bank of Florida, at their Banking House in the City of Tallahassee, ninety four thousand one hundred and eighty-two 22-100 dollars, for value received ; for securing payment whereof, I do hereby pledge my shares in the Capital Stock of said Bank. Witness my hand and seal.

(Signed)          SAMUEL PARKHILL, (SEAL.)

The declaration contains two counts ; one on the Bond and the other on account stated—pleas, *non est factum* and *plene administravit.* There was a similiter to first plea, and general replication to the latter.

Afterwards on the 22nd April, 1844, Martha Ann Parkhill administratrix, by her counsel, filed her plea *puis darrein continuance,* alledging " that since the last continuance to wit, on 22nd March, 1844, she was dismissed from the administration of the estate of said Samuel Parkhill, deceased, by competent authority, to wit : by the Judge of the Superior Court for said county, sitting as an Appeal Court to the County Court of Leon."

To this plea, "*puis darrein continuance,*" there was demurrer, 1st. Because the matters therein contained, should have been pleaded in *abatement.* 2nd, Because it should have been a plea in bar of *the further maintainance* of the action, and not *in bar of the action.* 3rd, Because the plea did not alledge that the said Martha had fully administered, and had not in her hands, at the time of her said dismissal, lands and tenements, goods and chattels, &c., sufficient to pay plaintiff its debt and damages ; and because it did not appear from said plea that she had delivered over to the administrator or administratrix, appointed in her stead, all, or any part of the goods, chattels, &c., in her hands not administered at the date of her said dismissal. 4th, Because the plea did not set forth the names of the persons to whom letters of administration were granted after her dismissal.

On the 24th February, 1845, plaintiffs in error by leave of the Court, filed an *amended* plea, *puis darrein continuance,* as follows :

And the said Martha Ann, sued as administratrix of Samuel Parkhill deceased, for further plea in this behalf, by leave of the Court, first had and obtained by Brockenbrough and Archer, her attorneys, comes and defends the wrong and injury, when, &c. ; and protesting that at the time of the commencement of this suit, she had no goods,

effects, or credits, lands or tenements of the said Samuel Parkhill, deceased, in her hands to be administered, subject to the plaintiff's action, for plea, prays judgment if the said plaintiff, its action aforesaid thereof against her, ought further to have and maintain ; because she says that since the commencement of plaintiff's action, to wit, at the county aforesaid, on the 19th day of December, 1843, the Honorable William M. Gibson, at that time Judge of the County Court of said County, and as such having and exercising jurisdiction as a Court of Probate, and being competent thereto, and having jurisdiction in that behalf, at the request and motion, and upon the petition of the said Union Bank of Florida, and against the will of this defendant for cause shown, revoked and annulled, the letters of administration before that time granted to this defendant, from which decision and order, this defendant appealed to the Superior Court of Leon County, exercising and having jurisdiction in that behalf ; and the said Superior Court afterwards, and since the last continuance, and before the commencement of this term, to wit, on the 18th day of March, 1844, in the county aforesaid, confirmed the said order of the said William M. Gibson Judge of the County Court, as aforesaid, and then and there revoked, and annulled the said letters of administration before that time, granted to defendant, and had and held by her at the time of the institution of this suit, and this defendant, was then and there divested, and put out of possession of all the estate, rights, credits and effects, or assets of said Samuel deceased, then in her hands, to be administered, and this defendant was not allowed to retain, and did not retain in her hands enough thereof, to satisfy said plaintiff's action, or any part thereof: but the whole of · said assets, rights, credits, and effects so remaining in her hands unadministered, were then and there, by order of said Superior Court, taken away from the possession of said defendant, and against the will of said defendant, and committed to the care, custody and control of the Marshal of the said Superior Court, who then and there took possession of the same, and the said letters of administration, so had and held by this defendant at commencement of this action, were revoked and annulled, and said defendant did not and could not retain in her hands, as administratrix, as aforesaid, effects sufficient to pay the plaintiff's claim, or any part thereof; and this she is ready to verify ; wherefore she prays judgment if the said plaintiff, its action aforesaid, thereof, against her, ought further to have and maintain, &c.

This plea was sworn to by Martha Ann Manly, late Martha Ann Parkhill and Hiram Manly, her husband.

To this plea defendant in error, on 26th February, 1845, filed its replication, replying the revocation, and annullment of the letters of administration, for want of sufficient securities on the official bond of the said Martha, and her dimissal, in substance, as set forth in the plea; and that upon such dismissal, the Court ordered the property of the estate of the said Samuel Parkhill deceased, to be taken charge of by the Marshal of the Middle District, until the further order of the Court ; and that the Court at another day, to wit, on 21st March, 1844, appointed a receiver of the said estate, until an administrator *de bonis non,* should be appointed.

The replication continued, " and the said plaintiff, in fact saith that afterwards, and on 22nd day of April, 1844, and before the filing of the said plea of the said defendents, Martha Ann and Hiram, in this behalf, the County Court of Leon. County, having and exercising jurisdiction as a Court of Ordinary, and being competent thereto, did constitute and appoint the said defendant Martha Ann, upon the petition of the said Hiram and Martha Ann, an administratrix *de bonis non,* of the estate of the said Samuel Parkhill deceased, and thereupon administration of the said estate, was duly recommitted in due form of law to the said defendant, Martha Ann, in her own right as such administratrix before the filing of the said plea of the said defendants in this behalf, as in and by the record and proceedings thereof, remaining in said County Court, fully appears ; and the said plaintiff further in fact saith, that all and singular, the goods and chattels, lands and tenements, rights, credits and effects, which were of the said Samuel Parkhill deceased, at the time of his death, and which came to the hands of the said Martha Ann, to be administered, and which remained in her hands unadministered, when the same were by order of said Superior Court, taken away from said Martha Ann, as in defendants said plea alledged, have again come to her hands, and to the hands of the said Hiram, in right of the said Martha Ann, administrators as aforesaid, and the same were, before and at the time of the filing of the said defendants plea in this behalf, and now are in their hands to be administered, &c."

On the 28th February, plaintiffs in error filed their rejoinder, which, after protesting, that neither at the commencement of this suit, nor since, the said Martha Ann, nor the said Hiram, had or possessed in their hands, to be administered, any goods and chattels,

lands, &c., which were of the said Samuel, deceased, at the time of his death subject to this action, rejoins : "That at the time and place in said replication mentioned, and by the authority there mentioned, the letters of administration *de bonis non*, therein mentioned upon the estate of the said Samuel, were not granted to the said Martha only, or to the said Martha and said Hiram in right of his wife only, but to said Martha in her own right, (by consent of said Hiram,) jointly with one William D. Moseley, now living, who then, and there, and thereby became, was, and still is, jointly with the said Martha, in her own right, and said Hiram in right of his wife, a joint administrator *de bonis non* of said Samuel Parkhill, deceased ; and all and singular, the goods and chattels, lands and tenements, rights, credits or effects, left unadministered, which were of the said Samuel, deceased, at the time of his death, which ever came to the hands of these defendants, or either of them, to be administered as administratrix or administrator, *de bonis non*, as aforesaid, at the times and places, and in the manner stated in said replication, or at any other time or manner howsoever or whatsoever, came to the hands of the said Martha Ann as administratrix *de bonis non*, and said Hiram as administrator *de bonis non*, in right of his wife, jointly with said William D. Mosely, the co-administrator *de bonis non*, and were, and are, so far as the same remain unadministered, had and held jointly with him, and not otherwise."    The rejoinder then enumerates certain liabilities of Samuel Parkhill, deceased, to the Union Bank of Florida, and states, that indentures of mortgage on certain land and negroes, were executed by the said Samuel to the Union Bank, to secure their payment ; that these sums of money, being unpaid at the time of the death of the said Samuel, the Union Bank, before the revocation and annullment of the letters of administration granted the said Martha, filed its petition, under the statute, against the said Martha Ann, as administratrix in her own right, and the said Hiram, as administrator in right of his wife, to obtain judgment of foreclosure of the said mortgage ; that after the affirmance by the Superior Court of the order of revocation of the original letters of administration to said Martha Ann, and after the granting of letters of administration *de bonis non*, to the said Martha Ann and William D. Moseley, "the said Union Bank of Florida, by its counsel, moved for judgment and decree by default, no objections having been filed under the statute, and the plea of Hiram Manly and Martha Ann, administrators, filed 3d May, 1844, not being verified by affidavit.

But the Court overruled the motion, and the petitioner then filed its demurrer special to said plea ; and therefor administrators, Manly and wife, asked leave to file additional pleas, and the Court so allowed and continued the cause. Petitioner then suggested the appointment, by the County Court of Leon county, of William D. Moseley, together with Martha Ann Manly, administrators *de bonis non* of said estate ; and moved the Court that the said William D. Moseley, administrator *de bonis non* of said estate, be made a party to said suit, and the suit continued, as well against the defendants as against the said William D. Moseley ; and the same was done accordingly. And such further proceedings were thereupon had in the same Court, that afterwards, to wit : at the Fall Term, 1844, of said Superior Court, to wit : on the 4th day of January, 1845, it was considered by the Court, that said petitioner do recover of said defendants, Martha Ann Manly, in her own right, Hiram Manly, in right of his wife the said Martha Ann, and William D. Moseley, administrators *de bonis non* of said Samuel Parkhill, deceased, the sum of seventy-one thousand and twenty-three dollars and forty-eight cents, due said petitioner, for principal and interest of its mortgage debt," &c. That judgment was accordingly entered against the said parties, and foreclosure granted ; and that said judgment still remains in full force, not annulled, satisfied or discharged. The rejoinder further alledged, that defendants had fully administered, all and singular, the goods and chattels, lands, &c., which were of the said Samuel, deceased, left unadministered, which came to their hands, or the hands of either of them, as administrators *de bonis non.*

To this rejoinder there was a demurrer, and the following causes of demurrer assigned :

For that the rejoinder does not fortify and support the matter by the said defendants, above pleaded in bar since the last continuance, but alledges new matter contrary to the plea, and was a departure therefrom ; that the defendant's said plea, since the last continuance pleaded, set forth the fact of the discharge of said Martha Ann from the administration of said estate of Samuel Parkhill, deceased, as a substantive bar of itself to the further maintenance of the plaintiff's action in this behalf ; and the said rejoinder now sets up the recovery of a judgment and decree rendered against said defendant and another, since such discharge, as and for a bar to the further maintenance of this action ; and the said rejoinder doth not sustain the said

plea of said defendants by them, since the last continuance above pleaded.

For that the said defendants have, in and by their said rejoinder, attempted to plead matter in abatement, after having pleaded their aforesaid bar, in this, the non-joinder of one William D. Moseley, with said defendants, as a defendant to this action.

For that the said defendants, in and by their said rejoinder, have attempted to put in issue another and different matter, since the last continuance happened and occurred, to wit : the judgment and decree of foreclosure in said rejoinder, set forth as rendered the fourth day of January, eighteen hundred and forty-five, which said decree so declared to have been rendered, was so rendered, as shewn by said rejoinder, long prior to the filing by said defendants of their said plea, since the last continuance above pleaded, and for that the said defendants cannot thus set up and plead two several and distinct matters, since the last continuance happened and occurred.

For that the said rejoinder is double and multifarious in this, that it sets up the non-joinder of William D. Moseley as a defendant with the said Martha Ann and Hiram ; the recovery and rendition of said judgment and decree, and that the said defendants, Martha Ann and Hiram, have no assets, except the sum of five dollars.

For that the said rejoinder is argumentative ; is no answer to the said replication ; and is uncertain, informal, and insufficient.

The Court sustained the demurrer, and thereupon judgment was entered against plaintiff in error for one hundred and twenty-two thousand one hundred and sixty-four dollars and eighty-seven cents, ($122,164 87-100,) being amount due on bond, and for costs.

*J. T. Archer*, for plaintiffs in error :

I. There is error in this, that the issues on the pleas of *non est factum*, and *plene administravit*, were not disposed of.

These issues, it will be contended, were disposed of by the introduction of the plea, *puis darrein continuance*. It cannot be questioned that, at common law, a plea *puis darrien continuance*, " is a waiver of the first plea, and no advantage can afterwards be taken of it, nor can even the plaintiff afterwards proceed thereon."

This rule is the necessary consequence of another rule of common law, which allows but one plea to the whole declaration, or one plea to each count. The introduction of a plea to the whole action, *puis darrein continuance*, must, therefore, at common law, operate as a waiver of the former plea to the whole action, or former pleas to

each count, for otherwise there would be more than one plea to the whole action.

Besides, a plea *puis darrien continuance, admits* a right of action at the commencement of the suit, while the former pleas *deny* a right of action at the commencement of the suit. The admission of the plea *puis* is contradictory to the allegations of the former pleas. To allow a defendant, therefore, to avail himself of a plea *puis darrien continuance,* and at the same time of former pleas in bar, would not only permit more than one plea to the whole action, but would allow such pleas to be contradictory, which is forbidden by the common law rules of pleading.

It is true, the statute of Anne makes it lawful for a defendant, *with the leave of the Court,* to plead as many several matters, as he shall think necessary for his defence. But even under this statute, a defendant has no positive *right* to plead more than one plea to the whole action, for the Court may, or may not grant the leave, at its discretion. Besides, the permission to plead *several* matters, does not include *contradictory* matters. In England, a plea denying, and another admitting the plaintiff's right of action, at the commencement of the suit, could not before, and cannot since, the statute of Anne, be pleaded together. 1 Chitty's Pl. 593. It is therefore easily accounted for, that in the English books, the rule is universally laid down, that a plea *puis darrien continuance,* is a waiver of former pleas.

But under our statutes, every defendant sued in this State, has the positive right, independent of the leave of the Court, to plead as many matters as he deems necessary for his defence ; and it is "no objection to *any* plea, that it is contradictory to any other plea filed by the same party, in the same cause." Duval's Comp. 95.

The reasoning which established and retains the English rule, cannot prevail against our statute ; and the rule itself cannot prevail here.

Our statute, under the construction I claim for it, promotes the ends of justice. What hardship is there in requiring a plaintiff to answer all objections which a defendant may set up against his demand ? On the other hand, what hardship does not exist in allowing a plaintiff to recover, because he has successfully answered one of several objections, while one or more of the others may contain good and valid grounds of defence, which might be established by the defendant ?

II. There is error in sustaining the plaintiff's demurrer to the rejoinder.

The judgment should have been given against the party, who committed the first error in the pleadings. The declaration is substantially a good one. The plea *puis* contains a good defence to the action. Its subject matter, is 1st: The involuntary dismissal of defendant Martha, from the office of administratrix. And 2d: The taking possession by the marshal, under the order of the Court, of all the assets in her hands, up to the time of dismissal.

The involuntary dismissal is of itself a good defence. It separates the administratrix from the estate, as fully as if she were actually dead. Taylor *vs.* Savage, 17 Peters, 224. Jewitt *vs.* Jewitt, 5 Mass. 275. Alsop *vs.* Mather, 8 Conn. 584.

The taking possession of the assets by the Marshal, is of itself a good defence. The plea, in this regard, has all the properties of a plea of plene administravit. It is an accounting for the assets, the legal possession of which by the administratrix is necessary to entitle the plaintiff to recover.

But if each of the parts of this plea, taken separately, does not constitute a good defence, there can be no doubt that both taken together, make up a complete defence. 1 Williams on Executors, 373, citing Garter *vs.* Dee, Freem. 13.

It was argued and adjudged in the Court below, that the defendants should have retained assets sufficient to satisfy actions pending. This cannot be correct. The administratrix was dismissed for want of a sufficient bond, under the 31st sec. of the act of 1828, concerning wills, letters testamentary, and letters of administration, &c. Duval's Comp. 176. Under this section, the Court is authorized, upon the dismissal of an administrator, to appoint a receiver or other administrator, doubtless for the purpose of taking immediate possession of the assets, and in contemplation of an immediate surrender of the assets by the dismissed administrator. If a dismissed administrator could retain for actions pending, the very object of the statute, to take the estate out of irresponsible hands, would be defeated.

But to retain in a case like this, against the ministerial officer, acting under the express order of the Court, is physically impossible, if the officer performs his duty. To have attempted it in this case, would have been a contempt, and punishable as such. It is altogether unreasonable to hold these defendants responsible in damages to

the amount of $122,164 87-100, for having permitted the assets to be taken from them by a Court of competent jurisdiction.

The plea puis is properly pleaded in *bar*, for if the facts set up in it are true, the plaintiff can never maintain an action against the defendants as administrators on the causes of action in the declaration mentioned. 1 Chitty, 481. Jenks *vs.* Edwards, 6 Alabama, (new series) 143. Jewitt *vs.* Jewitt, 5 Mass. 275.

The first error committed is in the replication—it does not maintain, explain or fortify the declaration, but abandons it, and departs from it. The declaration seeks a recovery on the faith of assets in the hands of the defendant Martha, as administratrix under the original grant of administration, while the replication seeks a recovery on the faith of assets received by her as "*an*" administratrix *de bonis non*, under a new grant of administration, without joining the co-administrator or co-administrators *de bonis non*, shown to be in existence by the use of the indefinite article "*an*." If a judgment could be rendered against the defendants as administrators, on the ground of assets in their hands as administrators *de bonis non*, jointly with another, then the securities of the first administration would continue liable for the administration of the assets by the administrators *de bonis non*—"which never could be right." 2 Call, 41–56.

But if the replication be good, the rejoinder is good. The latter answers the replication by setting up a judgment in the same Court, against the administrators *de bonis non*, in favor of the same plaintiff, upon a petition under the statute to foreclose a mortgage; which judgment, it is alleged, is more than sufficient to cover the assets in the hands of the administrators *de bonis non*. The sustance of the rejoinder, it cannot be questioned, would be a good bar to an action against the administrators *de bonis non*; what is the replication *in effect*, but a declaration against one of several administrators *de bonis non* ?

If the rejoinder does not support the plea and is therefore bad, the fault lies with the plaintiff. We have followed the plaintiff and it cannot complain.

The objections raised by the plaintiff to the *form* of the defendants pleadings, if well founded do not warrant a judgment on the demurrer against the defendants, even for costs. Duval's Comp. 95.

III. On the whole pleadings, judgment should have been given in favor of defendants.

The replication confesses the matters contained in the plea, and

the demurrer admits the matters contained in the rejoinder. The pleadings therefore show that Mrs. Manley had no assets whatever as administratrix, and none liable to this action as " an" administratrix *de bonis non.* Yet by the judgment of the Court on these pleadings, Mrs. Manley, *as administratrix,* is made to have assets to the amount of $122,164 87-100 ! How can the plaintiff's judgment be sustained when the plaintiff itself, on the face of the record, gives testimony against its verity ?

*Long & Walker,* for defendant.

*T. H. Hagner,* (on same side,) for defendant :

Contended as to the 1st error assigned, that the pleas of *non est factum,* and plene administravit, were disposed of; that they were waived by the defendants below pleading their plea, *puis dar. cont.* That the filing of that plea was a waiver of all other issues. He cited : Buller's N. P. 309. 2 Tidd's Prac. 847—849, last edition. 7 Bacon's Abrid. 685, Pleas and Plead. last edit. Croke Eliz. 49. 1 Salkeld, 79. 1 Lord Raymond, 693. Mansel on Dem. lxxxix. Hobart's Rep. 81. 1 Arch. Prac. by Chitty, 300—2. 1 Wheaton's Rep. 215. 13 Peter's S. C. Rep. 136.

10 Wendell R. 679, where the Court say : " The cause of action stands confessed to the same extent, as if no other defence than that in the plea *puis dar. cont.* had been urged." *And this ruling is sustained by the Supreme Court of the United States.*

As to the character of the plea, *puis dar. cont.* he cited, 1 Chitty Pl. 698': "It is not a departure from, but a waiver of the first plea ; and no advantage can afterwards be taken of it, nor can even the plaintiff afterwards proceed thereon. He also cited, 2 Wilson's Rep. 137.

In rebutting the position of the counsel of plaintiffs in error, he argued, that the effect, the legal nature and operation of this plea, was not altered by the statute of Florida allowing to defendants to plead, " as many matters of law or fact, as he, she, or they, may deem ne-" cessary to his, her or their defence ;" and that it should be " no " objection to any plea, that it is contradictory to any other plea " filed by the same party in the same cause." This was to be understood, with some reference at least to the rules of law, and the practice of the Courts. Here the defendants had pleaded as many and as contradictory pleas as they saw fit, and the case was at issue. They then apply for and obtain leave to file a plea *puis dar. cont.*

Now, the statutes of Florida have no where altered or changed that plea, nor does the statute cited at all vary its legal effect. The character of the plea is destructive, and whether those pleas which have gone before be few or many, they are alike waived. This results from the nature of the plea. In the case cited from 10 Wendell, several pleas had been filed, and yet the law was declared as we here insist it is. He insisted that the replication was legally sufficient in all respects, and maintained that the judgment on demurrer was correct ; for that the rejoinder was bad, and that, going back to the first error, the plea was bad also.

He explained the principles on which resort is had against the assets in the hands of administrators, even after the revocation of their letters ; that it was the right of the creditor to follow the decedent's estate. He cited 2 Williams on Executors, 1196. " If administrator plead, that before the date of the writ, his letters were revoked, he ought to alledge that he has fully administered, or that he delivered over the goods to the new administrator." He may be sued, then, having the property in hand, after his letters are revoked. Again : " If he plead the administration committed to another, plaintiff may reply, that before the second administration, he had wasted the goods." Wentworth on Executors, 472. Packman's case, 6 Coke Rep. 18. 11 Viner's Abridg. 119. Hobart's Rep. 49.

The plea here set up, is the personal discharge of administrators. We reply, that though the letters were revoked, yet the estate was recommitted before the filing of their plea, and that they have the assets of the estate in hand applicable to this debt. If we have the right to follow the decedent's estate, we have a right to follow it in this suit, for they have the property in hand, and in the eye of the law, they retain assets to pay. Toller on Executors, 129.

But their plea is fatally defective—they do not make good their exemption—they must alledge that they have fully administered—a *protestation* of full administration is not available. He cited 1 Chitty's Pl. 650—" *The allegation protested against is in effect admitted in that suit,* (in which made,) so that no evidence need be adduced in support of it."

The plea *puis dar. cont.* is defective then, by reason of omitting averment of plene administravit—they protest they had no assets— they admit then *in this suit* that they had. He cited also 1 Tidd's Prac. 687. If, then, the replication be bad, the plea itself is bad also, and judgment on demurrer must be for the plaintiff, against him

who has committed the first error.. That the rejoinder of defendants is a departure from the plea, is very apparent. The plea is in *abatement* of the *writ*, for personal disability—the rejoinder is *in-bar* of the *action* itself. For the rule of law upon departure in pleading, he referred the Court to, 1 Chitty's Plead. 681—697. Coke Litt. 304, a. 2 Saunder's Rep. 84. Lord Raymond, 233. 5 Dowling & Ry. 295. 16 Mass. Rep. 2. 2 New Hamp. 306.

But it is objected that the replication is bad. The plea had set up their personal discharge from the administration. We reply, (that though removed,) you are again administrators, and have the assets in hand, applicable to our debt...Where is the departure? We have the right to follow the decedent's estate—and make it answerable to our debt.

That the judgment on demurrer to plea *puis dar. cont.* is peremptory and final. 1 Wheaton's Rep. 215. Mansel on Demur. lxxxix.

As to the alledged want of privity between administrators and administrators *de bonis non*, he considered that the question was upon the judgment on demurrer to the plea of the personal discharge of the administrators themselves. They had been sued—they could only discharge themselves by proper proceedings, set forth in proper plea. This they had not done. Yet, he said, if privity were wanting, it did exist. These defendants, administrators and and administrators *de bonis non*, were the same parties—the new and the old were in the same right. There is a privity of estate in law. Jones, Chancellor, in Dale *vs.* Rosevelt, 8 Cowan Rep. 339, clearly declares such a privity to exist—so that " where a judgment " is against the previous representative, he coming in place of the. " testator, and the recovery being for the debt of the testator, he, " (the administrator *de bonis non*,) is liable.". Chancellor Jones shows, that the statute 17 Charles 2nd, was passed to enable administrator's *plaintiffs* to execute judgments in favor of prior executors, upon the ground that there was a want of privity. But " in relation to judgments *against* the executors or administrators, *the rule as to privity has always been otherwise.*" See also Ashhurst, J., opinion in 7 Term Reports, 178. He also cited, 2 Saunders, 217. 2 Tidd's Prac. 1113. 6 Term Rep. 1.

Upon the 3d error assigned, he insisted that judgment must be for plaintiff below, if the plea of defendant be reached by demurrer— for the plea is fatally defective. He cited, 2 Tidd's Prac. 847. 3

Saunder's Rep. 217, And he compared this plea,, with the requisites of such a plea there laid down.

HAWKINS, Justice:

The Court, in the case before it, have examined the record with care, and will endeavor so to adjudicate upon it, as that the legal rights of parties, as they appear, may be adjusted in accordance with the rules of law, pointing out those errors which may appear, and sustaining the legal rights of the respective parties, when they are correctly and substantially set out and embodied in the pleadings. The case has been so ably and elaborately argued—the arguments of counsel so elucidated by authorities—that the Court feels itself much relieved from the embarrassments which might otherwise exist, as to the arrival at proper conclusions, and a correct decision of the cause.

To rebut the first error, it is contended by the appellee, that the defendant in the Court below, by putting in a plea of *puis darrein continuance*, waived and abandoned all former pleas.

There can be no doubt that, by the common law of England, and adhered to in this country, a plea of *puis darrein continuance*, is always pleaded by way of substitution for the former plea ; and though not a departure from, is a waiver of it ; and when it is pleaded, the case stands in the same state, as if the plea had been one originally put in. Stephen on Pl. 66. Chitty on Pl. 697. 1, Archbold's Practice, 200.

The only cases cited by the counsel for the appellant; which seem to have at all a conflicting bearing, are Rayner & Hope *vs.* Dyett, 2 Wendell R. 301 ; and Calver *vs.* Burney, 14 Wendell R. 162. Nor have the Court, in its researches been able to find authorities at variance with the doctrines just laid down.

The first case was, where the defendant obtained a discharge of his person from imprisonment, under the act to abolish imprisonment for debt in certain cases—and this discharge he pleaded *puis darrein continuance*, after having pleaded in bar to the action. The plaintiff confessed the plea *puis darrein continuance*, proceeded and entered a rule for interlocutory judgment. On motion to set aside the rule, Judge Sutherland, while admitting the general rule of waiver, said : " This was not an admission of the plaintiff's right of action, nor did it set up any new matter of defence to the action ; it only *affected the remedy*, not the *rights of the plaintiff ;*" and that the pleas were

not waived. In Calver *vs.* Burney, 14 Wendell, 162, the same Judge sustains the general doctrine, and while affirming the decision of Rayner & Hope *vs.* Dyett, remarks : " That the rule does not apply, where the matter of the plea affects the plaintiff's *remedy only*, and not his *right of action;*" that the above case " sought to modify the *remedy*, and *not to defeat the action.*"

In the case before us, the plea is intended to go directly to the *action itself*; it is pleaded in bar, and partakes of a peremptory, and not a dilatory character; and the Court cannot view these two cases in the light of authorities, having a direct bearing upon, and application to the cause at bar.

The appellant's counsel contend, that the statute of Florida destroys the old common law rule, as to the doctrine of waiver of the pleas originally pleaded, by the plea *puis darrein continuance*, and cites the 26th section of " An act to amend an act regulating judicial proceedings," approved Nov. 23, 1828, which is in these words : " Sec. 26. Be it further enacted, That in all cases the defendant or defendants may plead as many matters of law or fact as he, she or they, may deem necessary to his, her or their defence; and it shall be no objection to any plea, that it is contradictory to any other plea filed by the same party in the same cause." Duval's Com. 95.

If this question rested solely upon the common law doctrine, the Court would have no difficulty in deciding that the first error was not well assigned; but the statute above cited interposes, and overturns, as we think, the entire structure of the common law doctrine, as to the waiver of former pleas, by a plea *puis darrein continuance*. The statute in its face, by its purview and spirit, seems evidently intended to abolish, to a certain extent, some of the rigid rules and technicalities incident to pleading at common law, to enable the defendant to avail himself of all and every possible defence, however contradictorily pleaded, which, by the old rules of pleading, he was unable to do; and in fine, by the liberality and comprehensiveness of its terms, to effect the furtherance of justice.

A statute of this nature, however much in some instances we may deplore an innovation upon the common law, commends itself to the liberal construction of a Court, whose aim should be, at all times, the *substantial justice* of the case.

We look around us, and see the attempts of different States of the Union to simplify the science of pleading, so as to enable the parties litigant to set forth their respective claims and defences, irrespective

of the rigid rules of that science, and to infuse into it a spirit of li-
berality; and while unquestionably they admire the beauty and force
of the fundamental reasons on which the science of pleading is found-
ed, and the ingenuity with which its rules are carried out, yet possi-
bly, they may conceive, that greater simplicity may not be incom-
patible with the grave deductions of logic.

The doctrine, as contended for by the appellee, took its rise in the
early stages of the law, and we find it in the oldest books. It has
stood the test of time, in all its vigor, and has been carried out in the
Courts of England and this country; and but that we think it con-
travenes the true intent and spirit of our statute, we would feel loth to
impugn its authority, or deny its application.

Originally, at common law, there could regularly be only one
plea, on which, if there were issue or demurrer, the cause was to be
determined, because there could be only one verdict in a cause; and
though the statute of Anne permitted several pleas, still they were to
be in unison, sustaining and not contradictory to each other. Multi-
plicity of pleading was to be avoided, and the use of pleading was,
to reduce the matters in pleading to a single point.

In framing them, there is required great care and nicety; and it is
said: "It seems dangerous to plead any matter *puis darrein continu-*
"*ance,* unless you be *well advised;* because, if that matter be 'deter-
"mined against you, it is a confession of the matter in issue, and no
"*nisi prius* shall be awarded." 6 Bacon Ab. 479. And should
the plea *puis* be defective, and be quashed, the judgment is at once
*quod recuperet,* and not *respondeas ouster.*

If the object of the statute was to simplify the rules of pleading
and soften down the rigid; (and in this instance) the arbitrary dicta of
the common law, where so proper an occasion for the attainment of
the object, or the fulfilment of its intentions, as in a case where even
at common law, more than usual severity is to be observed?

Why should the statute operate unequally by the extension of its
liberalizing policy to other cases, and this, in which most required,
be exempt from its genial influence, because not described in *totidem*
*verbis?* Although a doctrine relying for its support upon the hard-
ships, which might arise under it, is at all times dangerous as tend-
ing to destroy established precedents, yet construing the statute be-
fore us by an appropriate rule of construction, a desire to suppress
the mischief and advance the remedy, we can perceive many cases,
where great hardships would inevitably arise. Persons at all times

20

may not be " well advised" as to the pleading, and great injustice might be done by depriving a party of his legal defence pleaded in the first instance, because his plea of *puis darrein continuance* happened to be defective ; and why, if that plea is annulled, should not the party be remitted to his original defence ? To all this it may be answered, that the law is different, and the maxim *fiat justicia* should be followed, and that arguments *ab inconvenienti* should be avoided. We contend that the statute has altered the law ; we point to its spirit, its context, and we must look at the true meaning of words.

The statute says, that " *in all cases,*" the defendants may plead, &c. Is this phrase to be circumscribed by the meaning attached to it, by strict legal parlance, or is its true import to be gathered from the purview of the statute, and the true definition of its terms ? The dictionaries tell us, that " *case*" means or signifies, *a contingence,* a *state of things,* and if either of these synonyma was used in the statute, any and all doubt, would be dissipated.

The ample scope and free license to plead any number and contrariety of pleas granted by the Statute, have destroyed the reasons upon which the common law rule rests ; and we can perceive no good cause when the reason of a law has ceased to exist, why the law itself should have a being, in direct conflict, as we think, with our statute, against the policy of our laws, and if persisted in, calculated to produce no good results, but rather consequences replete with hardship and extreme injustice ; and with the views expressed, we clearly are of opinion, that this rule of the common law, as to pleas *puis darrein continuance,* should cease to be regarded by the juridical tribunals of the State.

The first error is therefore well assigned.

As to the plea *puis darrein continuance,* we think it well pleaded. It is contended that this plea should have been in abatement and not in bar. We think that the defendant could have pleaded in either ; she could have pleaded in abatement, that she was not administratrix of Samuel Parkhill deceased, but was administratrix *de bonis non* of said Parkhill, and there can be no doubt, but that she could plead *ne unques administratrix.* The authorities are full upon this subject.

To an action against an executor, he may plead in bar *ne unques executor.* That be renounced, and *nulla bona devenerunt ad manus ;* so he may plead in bar, the same bar as his testator could have done, as *non assumpsit,* or *non est factum.* 6 Comyn's Digest, 2, D. 7, 8.

So an administrator may plead *in bar* ne unques administrator. 6 Comyn's dig. 2, D. 12. 1 Tidd, p. 644.

To an action against an administrator he may plead in abatement that he is not administrator, but executor, ib, 2, D. 12, page, 315; thus by analogy establishing the principle before asserted, that Martha Ann Manley might have pleaded in abatement if she thought proper, that she was not administratrix, but administratrix *de bonis non*, and it is equally clear, that she could plead *in bar ne unques administratrix*. Pleas in bar are calculated to show either that the plaintiff never had any cause of action, or if he had, that it is discharged by subsequent matter. 1 Tidd, p. 643.

" Whenever the subject matter of the plea or defence is, that the plaintiff cannot maintain any action *at any time*, whether present or future, in respect of the supposed cause of action, it may and usually must be pleaded in bar." 1 Chitty on pleading, 481. A plea in abatement must not only show the error to the plaintiff, but enable him to correct it by giving him materials for avoiding the same mistake in another suit in regard to the same cause of action, and give the plaintiff a better writ: ib.

The plea in bar in this case we think good, because the Union Bank could not at any time after the defendant's dismissal from the first administratorship, have brought suit against her in the capacity of administratrix simply; that *e. o. instanti* the letters of administration were taken from her and annulled, she became as to the suit *ceviliter mortuus ;* and all the rights, powers, duties and liabilities, which had previously attached to her in the character of administratrix ceased and no longer existed. In Toler on Executors, 131, it is laid down where letters of administration are revoked, if an action be brought by an administrator, and while it is pending, administration is committed to another, the suit is abated.

In the case of Taylor *vs.* Savage, 1 Howard U. S. R. 286, there was a decree in favor of Taylor against George M. Savage, the executor of Samuel Savage deceased. On the very day of the decree, George M. Savage was removed from his executorship, and one Benham appointed administrator *de bonis non*—the Court in that case said : " By his (George W. Savage,) removal from the office of executor, he was as *completely separated* from the business of the executor, as if he had been dead, and had no right to appear in or be a party in this or any other Court, to a suit, which the law confided to the representative of the deceased." No further proceedings

could be therefore had in the decree of the District Court, until Benham the administrator '*de bonis non* was made a party.

The defendant in this cause could no doubt have come in voluntarily and made herself a party as administratrix *de bonis non* to the suit, by due and proper application to the Court, but this she did not do. The case of Hunt *vs.* Wilkinson, 2 Call. 41, is cited by the appellant. It seems that a Mrs. Hunt had been appointed a general administratrix of Charles Hunt deceased; that an office judgment was obtained against her in that capacity; upon its being set aside, she was permitted to plead, that since the last continuance, the will of the said Charles Hunt had been committed to record, and that administration with the will annexed was committed to her, whereby she became bound to surrender her letters of administration granted to her before the appearance of the Will; that she ought to be sued as administratrix with *the will annexed* of Charles Hunt deceased, and *not* as administratrix; Judge Carrington remarked: " In this case, at the time of their office judgment, Mrs. Hunt was defendant in her character of general administratrix; but before the end of that term, that character had ceased, all her powers in that capacity were done away and destroyed by the production and proof of the will; so that she was no longer general administratrix, but was then acting in a character correspondent to that of executrix, charged with the execution of the will, instead of the statutory administration."·

The plea was sustained as a good plea, and it was after two arguments, decided that an administratrix *with the will annexed,* must be sued in that character, and if sued as administratrix *only,* without the addition of the words " *with the will annexed,*" she may plead in abatement.

This case so clearly in point, where the facts bear so close an affinity to those in the present· cause, its decision emanating from so high a source, and supported too by other authorities, entitles it to the most respectful consideration of this Court. In this case a plea *in abatement* was pleaded and sustained, and the question as to plea in *bar* did not arise. That question arose for direct adjudication in the case of James Jewett *vs.* Betsey Jewett, administratrix of Caleb Jewett, 5 Mass. 276. This was an action against Betsey Jewett as administratrix; she pleaded in bar, with *a protestando,* (as in this case) that she had no effects, &c., of the intestate in her hands to be administered; that since the commencement of the action, she

had been removed from the administration by the Judge of Probate, on the petition of James Jewett, *the plaintiff.*

It was contended on demurrer to this plea, that the plea should have been in abatement, being in the nature of a plea to the person. C. J. Parsons, said, "in the case at bar, if the matter of the plea be good, it shows that the plaintiff has no cause of action against the defendant, either in this or any other suit ; it is therefore properly pleaded in bar."

It is contended by the appellee that the defendant should have pleaded *plene administravit,* or that she handed over the assets to the new administrator, and should have retained sufficient to satisfy the plaintiff's demand.

The first objection as to the plea *plene administravit* cannot now receive consideration, as by the decision of the Court in the former part of this opinion, the plea not being waived, is still in full force and being, and undisposed of.

The law as laid down in 11 Viner Ab. 119, is in these words : "the defendant being sued as administrator, pleaded, that before the day of the writ, his administration was removed and granted to another ; per Wild, he ought to have set forth that he had fully administered the goods in his hands, or else that he had delivered them over to the new administrator, for otherwise the debtor might be at a loss, for those goods shall not be assets in the hands of the new administrator till they come into his possession."

It is true, that the defendant did not plead *plene administravit,* in the plea *puis darrein continuance,* or in a different plea, but she pleaded, that she was removed from the administration ; that by the order of the Court she was divested and put out of possession of all the estate, rights, credits and effects of Sam'l Parkhill, deceased, in her hands to be administered ; that she was not allowed to retain, and did not retain in her hands sufficient to satisfy the plaintiff's *action, or any part thereof,* but that the whole of them were placed by the order of the Court in the hands of its Marshal.

A plea *plene administravit* even if not in before, would perhaps have been considered superfluous, inasmuch as all the assets being taken out of her hands, there was nothing left to administer, and the replication admits, that all effects *et cetera* which were of Samuel Parkhill, deceased, at the time of his death, and which came to the hands of Martha Ann Parkhill to be administered, and which remained in her hands unadministered, when the same were by order of the

said Superior Court, taken away from said Martha Anne *as in the plea alledged.*

It was impossible for the defendant to have retained assets as at common law, for the order of the Court was imperative, and an attempt to retain would have been idle and futile. This argument, coming from a party upon whose petition the order was made, does not appear with a very good grace. Nor could she have pleaded, that she handed over the assets to the new administrator, for the plea would have been *false;* nor can we discern any impropriety in the plea pleaded, drawn as we think with sufficient legal correctness and nicety, setting forth a good and substantial defence by way of bar to the action, based upon facts which are admitted by the party plaintiff.

Could an execution have correctly issued on the judgment obtained against the defendant ? It could not have been issued against the estate in the hands of Martha Ann Parkhill, the general administratrix, because there was no such character in existence ; nor against Martha Ann Parkhill, as administratrix *de bonis non,* because the execution should have pursued the judgment *strictly,* otherwise it would be void; and the judgment here is against the said Martha, as the general administratrix.

It is urged that a privity existed between Martha Manley as general administratrix, and Martha Manley, administratrix *de bonis non.* That a certain privity at common law exists, it must be admitted— as between administrator and administrator *de bonis non,* or executor and administrator *de bonis non, with the will annexed.* There seems to be a distinction as to this privity, in suits *by* or *against* administrators—in the former none existed, which probably gave rise to the statute of 17 Charles 2, C. 8, which enabled an administrator *de bonis non* to take out execution on a judgment of an executor or administrator. 8 Cowen 340. It was laid down by C. J. Parsons, " that an administrator *de bonis non* with the will annexed, could not sustain a writ of error to reverse a judgment recovered by the original executor, because there is in law no privity between an executor and administrator *de bonis non, with the will annexed ;*" and a judgment recovered by the executor, cannot be executed by the succeeding administrator. Grant *vs.* Chamberlain, 4 Mass. 612. This was cited by the appellant.

But the same Judge remarks, that the statute of Charles 2d is not in force in his State, and indicates that his decision would have been the reverse, if it had.

If judgment had been obtained against the defendant, and she had died, no doubt but that *scire facias* would lie against the administrator *de bonis non*. 8 Cowen 339, citing Norgate *vs*. Snap, (W. Jon. 214.)

Admitting the doctrine of privity to the fullest extent, how does it avail in the present case ? The suit against Martha Manley, administratrix, abated as completely by her removal, as if she had died ; and the suit should have been brought *de novo*, against her, in her new capacity of administratrix *de bonis non*. The two characters were incompatible, and could not exist together. If the defendant had wasted the goods, she would have been liable in an action of debt, in case the administration had been granted to another. 472 Wentworth on Exrs.—and besides, would be responsible to the new administrator.

The fact that the property and assets again came to her hands at the time of the plea pleaded, does not vary the result ; for though *identically* the same person, yet legally viewed, Martha Manley, administratrix, and Martha Manley, administratrix *de bonis non*, are separate and distinct characters—appointed by different grants of administration, giving different securities, and not similar in any respect, save the duties and powers incident to the administration. The sureties of the first administration were certainly discharged, after the dismissal of the defendant, as to all her acts posterior to that event ; and the second sureties were not responsible for any of her acts previous to her second appointment. Another consideration is, that in case this suit should be sustained, the securities of the first administration would continue liable for the result of this suit, although the functions of the general administratrix had ceased, and who yet might be involved, if creditors were allowed to proceed upon the first administration. The blending of the two characters would be attended with many perplexities and embarrassments, and in all probability, with great injustice.

We will now confine our attention to the pleadings of the cause.

" It is a rule in pleading, that on demurrer, the Court will consider the *whole record*, and give judgment for the party who, on the whole, appears entitled to it." Stephens on Pleading, 144. And if the pleading be bad, judgment shall be had against him, who made the first default. 6 Comyn's Digest, 183. And it matters not, whether the issue be of law or fact, and whether the cause has proceeded to issue or not, the Court is always bound to examine the

whole record, and adjudge for the plaintiff or defendant, according to the legal right, as it on the whole appears.    Stephens 144.

The plea of *puis darrein continuance*, we have already decided, is good; and next follows the replication.    We think this is clearly a departure from the declaration.    That sets forth the cause of action, and declares against Martha Ann Parkhill, *administratrix of the estate*, real and personal, which was of Samuel Parkhill, deceased. The replication sets out the order of the County Court, revoking and annulling the letters of administration to the said Martha Ann ; the appeal to Leon Superior Court by the said Martha Ann ; the affirmance of the order of dismissal of the County Court by said Superior Court, and the delivery of the property of the estate of said Parkhill into the possession of the Marshal of the said Superior Court; that a receiver was duly appointed for said estate, till an administrator *de bonis non* was appointed by the County Court of Leon county ; and that afterwards, on the twenty-second day of April, 1844, and before the filing of the said plea of the said defendants, Martha Ann and Hiram in this behalf, the County Court of Leon county did constitute and appoint the said Martha Ann, upon the petition of said Hiram and Martha Ann, an administratrix *de bonis non* of the estate of Samuel Parkhill, deceased.

The declaration is against her, in the capacity of administratrix simply; the replication, by setting forth the dismissal of the defendant as administratrix, and her appointment as administratrix *de bonis non*, is clearly a departure in pleading.    It is inconsistent with the declaration, because the two capacities in which the defendant is charged, are, as has been already shown, inconsistent with each other—being in different rights, and distinct in every particular.    It should fortify and maintain the matter in the declaration.    It does not, and the allegation in that, and the replication, are in direct conflict.    The plaintiff, by his replication, has shewn that he has no action against the defendant, (by admitting her dismissal as administratrix ;) and when this is the case, there shall be judgment for the defendant, though the bar be defective, for the Court will judge on the whole record.    6 Comyn's Dig. (E 37,) page 137.

The *rejoinder* is not good—it is clearly a departure from the plea, and does not support it—it alledges new matter inconsistent with the plea, and is defective.    It is intended to answer the replication— they are both bad.    It is unnecessary to set forth the reasons or

grounds of this opinion—and the Court must go back to the first error or default.

There were several grounds assumed by the counsel on either side, involving the discussion of principles of great interest and importance; but the Court have deemed it proper to notice only those which seemed to have a direct bearing upon, and tended to a direct decision of the cause.

The judgment must be reversed, with costs.