The Union Bank of Florida, Plaintiff in Error, vs. The Heirs and Terretenants of Jeremiah Powell, deceased, Defendants in Error.

The act of November 10th, 1828, requires that a *scire facias* or action of debt against executors or administrators, or other persons having charge of the estates of deceased persons, upon any judgment against their testators or intestates, shall be brought within five years from their qualification. All such judgments, after the expiration of five years from the qualification of the executors, administrators, &c., are presumed to be paid, unless some proceeding shall have been had in the intermediate time.

It is not necessary to state in a plea of this statute, that no proceeding had been taken within that time. To avoid the bar, it is necessary for the plaintiff to show such proceeding.

The 18th chapter of 13th of Edward 1st, which gives the *elegit*, is not in force in this State, because it is inconsistent with the statute of this State which provides for the sale of land on execution. But the chapter which gives the writ of *scire facias* is in force here by virtue of the act of November 6, 1829, adopting the common and statute laws of England, which are of a general and not local nature, with certain exceptions and provisions.

A judgment at law, or a decree in equity, is a lien upon the lands of a debtor which binds from its rendition. This lien is not lost by the death of the debtor, but it continues only upon the compliance by the creditor with the provisions of the laws regulating the exhibition and enforcement of demands against the estates of decedents.

Lands are assets, under the laws of this State, and it is the duty of the executor or administrator, in case there should be a failure of personal assets, to make application in the mode pointed out by law, for the sale of the lands. This is not a matter of discretion with him.

Upon the death of the ancestor, the fee vests in the heir, but he takes it subject to the payment of debts.

Lands being held to be assets in this State in the hands of the personal representatives, it is necessary in a proceeding by *scire facias* against the *heirs and terretenants* to make the executor or administrator of the deceased, a party. It is questionable whether it is necessary to make the heirs and terretenants parties to a proceeding by *scire facias* to subject the lands. Unless they can be regarded as persons in charge of the estate and the lands in *their* hands assets, they are not properly made parties.

Error to Leon County Circuit Court.

The case is stated in the opinion of the Court. The judgment in the Court below was rendered at the Spring Term, 1849, Honorable THOMAS BALTZELL, Judge, presiding.

The case was argued in this Court by R. S. Hayward and L. A. Thompson, Esqrs., for plaintiff in error, and by M. A. Long, Esq., for defendants in error.

*R. S. Hayward,* for plaintiff in error:

The Court below erred in overruling plaintiff's demurrer to first plea of defendants, because—

1. The plea is no answer to the *scire facias.* The *scire facias* was a proceeding in this case, to revive a judgment against the heirs and terretenants of Jeremiah Powell, deceased, in order to charge lands which, before the death of Powell, were bound by a judgment against him and others. The plea urges as a ground for not charging these *heirs* and *terretenants*, that certain persons qualified as executrix and executors of Powell, and that said *scire facias* did not issue within five years next after such qualification. Now, this executrix and these executors are not parties to this proceeding—they are not mentioned in the *scire facias* or declaration ; and if it had been ne-

cessary that the *scire facias* should have been issued against them, and not against the heirs and terretenants, the failure to name them in the *scire facias* would have been good ground for plea in abate. ment.

2. The plea is insufficient. It is based upon the act of November 10th, 1828, Thomp. Dig., p. 444, sec. 3, § 2, which says "no action of debt," &c. The plea should have stated, not only that five years had elapsed from the qualification of said executrix and executors to the suing out of said *scire facias,* but that *no proceeding had been had upon said judgment within that time.* The law does not abso-lutely require that *scire facias* shall be sued out against executors or administrators within five years, but that that shall be done, *or some proceeding had upon the judgment,* in order to do away the presump-tion of payment. It would be hard, if, whilst we are endeavoring to make our demand out of the *survivors* in this case, the statute of limitations should be running on to bar us of our ultimate rights against the *executors of the deceased,* in the event of the insolvency of the survivors. This point is before your Honors, in the case of Oscar Filyau and wife vs. Henry Laverty.

But the principal question which arises upon demurrer to defen-dant's plea is this : Could the executrix and executors of Powell have been properly made defendants to this *scire facias ?* If they could, then the above statute of limitations may have been correctly pleaded in bar of our action—if they could not, then their plea was demur-rable. The judgment upon which this *scire facias* issued, was founded upon a written contract—it was a *joint* judgment ; and by reference to 1st Chitty's Pleadings, page 50, it will be seen that, " in the case of a *joint* contract, if one of the parties die, his execu-tor or administrator is *at law* discharged from liability, and the sur-vivors alone can be sued ; and if the executor be sued, he may either plead the survivorship in bar, or give it in evidence under the general issue." " If the contract were *several,* or joint and several, the executor of the deceased may be sued *at law* in a separate ac-tion, but *he cannot be sued jointly with the survivor, because one is to be charged* DE BONIS TESTATORIS, and the other DE BONIS PROPRIIS." Vide note 4 Chitty's Pleadings, p. 50. This authority is conclusive upon the point that the executrix and executors of Powell could not have been made defendants in the *scire facias.* Clearly, then, the

23

statute of limitations, applying to *executors* and *administrators*, cannot be properly pleaded as a bar to our proceeding against the *heirs* and *terretenants.* This statute, however, it may be urged, not only operates as a bar to persons suing *executors* or *administrators,* but also applies to those who sue " *other persons having* CHARGE *of the estate of a testator or intestate.*" This clause was never intended to apply to *heirs* and *terretenants,* who have the *estate itself,* and not the *charge* of it. It refers simply to *curators.*

I have shown that the executors or administrators of a deceased party to a *joint judgment,* cannot be proceeded against at law. The next question presented in the cause is this : Can we subject the lands of Powell, in the hands of his *heirs* and *terretenants,* to the payment of the claim of the Union Bank of Florida ?

By the law of England, " where judgment is had against *several defendants,* and one of them dies before execution, since the charge upon the judgment survives as to the *personalty,* though not as to the *realty,* the plaintiff may have *scire facias,* framed upon the special matter, viz : against the survivor, to show cause why the plaintiff should not have execution against him of his goods, and chattels, and of the moiety of his lands, and against the heirs and terretenants of the deceased, to show cause why the plaintiff should not have execution of the moiety of the lands of the deceased, without mentioning any goods." 2 Saunders R., p. 72.

This proceeding against the moiety of the lands in the hands of the survivors, and the moiety in the hands of the heirs and terretenants, originated under the statute West. 2, 13 Edward 1st, which gave the *scire facias* and *elegit,* and enabled the plaintiff to extend half of the lands of each of the parties defendant, until his debt was paid. Our writ of *fieri facias* gives us a more extended remedy, by rendering *all* the lands subject to sale ; so that where in England, the plaintiff in *scire facias* proceeded against half the lands only, we ask *here* to have execution of the whole.

Such is the English law, and such is the law of this State, except so far as it has been altered by statute.

Let us see how far our statutes have qualified the right, which, under the law of England, we had. The statute of this State, passed in 1833, Thompson's Digest, page 202, section 7, par. 2, declares that " real estate shall be considered assets," &c.

Paragraphs three and six further provide, Thompson's Digest, 202. These are the principal enactments of 1833, relative to the making *realty* assets in the hands of executors and administrators. It is *considered* assets, and after personal assets are exhausted, may be sold to pay debts, under an order from the Judge of Probate. This was certainly a very imperfect state of the law, when we consider that the same statutes which made lands assets in the hands of the executor or administrator, did not require the executor or administrator even to *inventory* the real property of his testator or intestate ; and the bond, which the law of 1828, Thomp. Dig., page 197, par. 9, required him to give, was only conditioned for the making a true and perfect inventory of all and singular the *goods* and *chattels, rights* and *credits* of the deceased, which shall come to his hands, and further to make a just and true account of his administration of such goods, chattels, rights and credits, and to pay over the balance, &c.

Under such a state of the law, if the executor reduced land to possession, under order of Probate Court, and sold it, and kept the money, the only remedy which creditors or heirs would have, viz : suit on his bond, would be entirely unavailable, because his bond does not cover realty.

But the statute of 1841, Thomp. Dig., page 203, section 7, paragraphs 6, 7, 8, 9, 10, 11, 12, went further, and required the executor or administrator, when it became necessary to sell real estate for the payment of debts, or to make more equal distribution amongst the heirs or devisees, to petition the Circuit Court, setting forth the reason for his application, &c. Whereupon, the Court will order citations to all the heirs or devisees, who may appear and answer, and oppose the application, and take testimony, as in Chancery cases, to controvert the allegations of the petitioner. It becomes, indeed, as a Chancery cause, between the heirs or devisees, and the administrators or executors, and if the executor or administrator succeed, the Court appoints commissioners, (not the executor or administrator,) but *commissioners*, to sell the real estate, and the petitioner never gets, nor can get possession of these assets from the commissioner, until he enters into a bond, (another bond from his ordinary administration bond,) for the faithful payment and application of the fund arising from the *sale* made by the *commissioners*, according to the decree of the Circuit Court rendered in the cause. The law of '41

does not entrust petitioner with the realty, it regards him as antagonistic to the heirs ; it seems designed to protect the heir from his encroachments, and it will not even allow the proceeds of sale, and never the land itself, to reach his hands without some security, *additional* to his bond for the administration of his *goods, chattels, rights* and *credits* ; nor to apply one cent of said fund to the payment of any debt, except as ordered by the Court in its decree. And *further,* upon the coming in of the report of the commissioners, the Court will render a final decree in the cause ; and, if the terms of the sale have been complied with, will direct the commissioners, (not the executor or administrator,) to convey.

The above is a brief exposition of the substance of the law of 1841, and from this view, I think we may conclude, that there are several conditions precedent to lands becoming assets in the hands of the executors or administrators : 1. *Petition.* 2. Hearing and good cause shewn. 3. Decree. 4. Bond. Even then, he only gets the *monies* from the commissioners, which are henceforth regarded as assets.

If this be true, may not lands be pursued by a judgment creditor, (who has a *lien* upon them by a subsequent statute to that making them assets,) unless executor or administrator file his petition ? May not lands be liable to a *judgment creditor*, if, upon petition heard, it be decreed by the Circuit Court, that the personalty is sufficient and that the realty be not sold ? A judgment creditor has a lien upon lands, and I contend that these lands go to the hands of the heir charged with the judgment. Again, suppose the Executor fail to give the bond required, do not the lands continue in the hands of the heir ? (See Fitzpatrick et al. vs. B. and W. Edgar, 5 Ala. R., p. 503.) If they continue in the hands of the heir, are they not subject to the lien of a judgment ? The lien of a *judgment upon lands* is analagous to that of an *execution upon personalty.* See the case of Moseley vs. Edwards, 2 Florida Reps., where the *lien* of a *judgment* upon lands being declared to be a lien as *at common law*, is regarded as not liable to be divested by *laches,* as in Alabama. Fitzpatrick et al. vs. B. and W. Edgar.

What change has our statutes effected in the law of England ? I answer, simply this : *that all debts* not in judgment, must be presented with us to the executor or administrator ; whereas, in England, *the lands descended were liable in the hands of an heir to a judgment*

*against him on the bond of his ancestor, in which he was expressly named.* This alteration, and only this, has been effected by the Legislature of Florida. Thus far goes the case of Gilchrist, Judge, vs. Fillyau and wife, 2 Flor. Reps., p. 94, and no further. That case declares that an heir cannot, in this State, be sued on the bond of his ancestor, because bond debts are with us of no higher dignity than simple contract debts ; and because lands, being only *sub modo* assets, it would be impossible for an executor to know whether the personal estate were insufficient or not, and consequently so to report it as required by law, unless these demands were brought against *him.* True, the Court seems to decide that lands are assets under our law of 1833, confirmed by 1841, but I do not understand that the Court regarded them as assets, unless, in case of insufficiency of personalty, they were sold by commissioners, and the money paid over to them. For the case of Gilchrist vs. Fillyau was decided by the authority of an Alabama decision, (in which State the law is declared to have furnished a copy for us,) and in that case the defendant pleaded, " That since the *scire facias* was sued out, *the estate had, according to the statute, been reported insolvent.*" See, also, the argument of Elmore, counsel, and the decision of the Court, in the case of Fitzpatrick et al. vs. B. and W. Edgar, 5 Ala. Reps. In the former case, in 1 Stewart, the Court say : " Our statutes have pointed out another mode for subjecting the lands to the payment of debts. If the personal estate be insufficient, the administrator or executor *shall make his report* accordingly, and the land shall be sold by order of the Court. This course does not abridge the rights of creditors ; for as the administrator cannot have fully administered, if, on a deficiency of personal estate, he fails to make his report as required, so that the lands may be resorted to, the remedy is more ample than at common law." What was the remedy at common law ? Suit against the executor, to subject the personalty alone to the payment of the debt. How was the remedy enlarged by the statute of Alabama ? By making it the duty of the executor or administrator to report the personalty insufficient, and to apply for sale of realty and if he did not do this, he and his securities were liable on his administration bond. Suppose he neglected to do this, did the realty become assets in his hands ? I imagine not—it remained with the heir, and the executor and his securities paid the debt. But what was the condi-

tion of the bond ? It was that he should well and truly perform all the duties which are, or may be by law required of him. Clay's Ala. Dig., p. 221, sec. 3. This condition is broad enough to cover a case of refusal to make application for the sale of realty. But suppose, in Florida, the executor or administrator should fail or refuse to make the application spoken of in the statute, would the creditor have a remedy by suing him on a bond, the condition of which is only to administer faithfully the *goods* and *chattels, rights* and *credits* which come to his hands ? I cannot think he would be able to recover in such a case. Notwithstanding the Alabama law was, in this respect, so much more perfect at the time of the decision in 1 Stewart, p. 193, than our own is, the Legislature, deeming it unequal to the attainment of the desired object, passed subsequently the following act : " Whenever an executor of any deceased testator," &c. 5 Ala. Reps., p. 501, which case see *passim*—and again in 1843, the Legislature of that State passed another law requiring the Court to demand of an executor or administrator a bond for administration of goods and chattels, &c., together with realty. Clay's Ala. Dig., p. 229, sec. 44. The first of these statutes set forth in the opinion of the Judge, in the case of Fitzpatrick et al. vs. Edgar, before cited, is the only law of Alabama which ever gave any remedy against the heirs—for by the common law, the heir could only be made liable in a real action, and the stat. West. 2 was never adopted there. There is consequently this distinction to be taken between the law of Alabama and the law of this State—that *there* the lands were never liable in the hands of the heir, unless the remedy were *expressly given by statute,* and *here,* the right to pursue them in the hands of the heir *exists,* unless *expressly taken away by statute.*

I have before remarked that the remedy of the *bond* creditor of the ancestor is thus taken away by statute—or in other words, the statute of Florida has, to that extent, altered the law of England. Let us go one step further, and inquire if our statute has made any alteration in the English law in relation to the method of proceeding on the part of a *judgment* creditor. In 2d Saunders, p. 72, it is laid down, that where a judgment is had against one who dies before execution, upon a return of *nihil* to a *scire facias* against his personal representative, a *scire facias* will lie against his heirs and terretenants. In such a case, I should suppose that, under our law, *nihil* could not be

returned to the executors or administrators properly, so long as heirs had any real estate which the executors might, *upon application, reduce to assets*, and consequently this final resort against the heirs, in such an event, would be superfluous.

But where *judgment is had against several parties to a joint contract*, the executors or administrators of a deceased party, as I have before shown, are not liable at law—they cannot be charged *jointly* with the *survivors*, because you cannot have execution *de bonis testatoris* and *de bonis propriis*. Such a judgment being no charge upon the executor, if the personalty were sufficient to pay all *the other debts* of the estate, he would not reduce the land to assets on account of said judgment; the heirs, I imagine, could successfully resist his application so to do, if he desired it, because he (executor) is not bound for such a debt, and the lands have descended to the heirs under our statute of descents—or in other words, the fee has been cast upon them, subject to the charge of such a judgment. To this it may be answered, the executor is liable in equity—but I submit to this Court that we are judgment creditors, whose claim is made by *statute* a *lien* upon land. Our's is not an *equitable lien*, to be enforced, after great and expensive litigation, in a Court of Chancery—it is not such a lien as can be deferred to junior incumbrances, and postponed even to simple contract creditors, as might be the case if we were driven into equity, but it is a *statutory* lien, and one which our statute declares shall be a "*lien as at common law*, which words, this Court has decided, mean something. Case of Moseley vs. Edwards, decided at the last term.

From this, I think it fairly deducible that the law of England has undergone no change, through the medium of our statutes, with respect to the remedy against the survivors, and the heirs and terretenants of a *joint* judgment debtor. Our statute in such case gives no remedy against executors or administrators, and until it provides one, and thus alters the practice, which, by virtue of our adoption of the English statutes, must be pursued, this proceeding is regular and sustained by law.

*M. A. Long*, for defendant in error:

1. Two principal questions arise in this cause. The one is, whether in Florida, a *scire facias* can be maintained against the

heirs and teretenants of a deceased person, against whom and others a joint judgment had been rendered before his death, to have execution of the real estate of the deceased. This arises upon a demurrer to defendant's plea, which reaches back to the declaration. I contend that upon a full view of our several statutes, it will appear that this remedy is obsolete in this State, or more properly speaking, has been superseded by another and a better.

In England, " where a judgment is had against *one* who dies before execution, it is said that a " *scire facias* will not lie against his heirs and terretenants, until a *nihil* is returned to a *scire facias* against his personal representative." 2 Saund. Rep., 72. But " where there are *several* defendants, and *one* of them dies before execution, since the charge upon the judgment *survives as to the personalty*, though *not* as to the *realty*," &c., " the plaintiff may have a *scire facias* framed upon the special matter, namely, against the survivor, to show cause why the plaintiff should not have execution against him of his goods and chattels, and of the moiety of his lands, and against the heirs and terretenants of the deceased, to show why the plaintiff should not have execution of a moiety of the lands of the deceased, without mentioning any goods." Ib.

Now I ask the Court to observe, that where the judgment is against *one* only, who dies before execution, no *scire facias* can be had against the heirs and terretenants, without first attempting to make the money out of the personal property in the hands of the representative of the estate. In default of sufficient personalty in the hands of the executor or administrator, the lands are resorted to in the hands of the heir (who is the oldest son) and terretenants, because the same in that country does not go to the executor and administrator, and could never be subjected at all to the payment of judgments, if resort was not had to him, to whom alone they directly descend.— " By the laws of Florida, there is no such thing as primogeniture ; the land descends in parcenary, and is expressly declared assets in the hands of the administrator or executor, and after the exhaustion of the personal assets, may be sold to pay debts due by the estate, besides being liable with personal property to an execution existing upon any judgment against such executor or administrator," is the language of this Court in the case of Gilchrist vs. Filyau and wife. 2 Fla. Rep., 95.

It is obvious, therefore, that there is no necessity in Florida for a *scire facias* against the heirs and terretenants, in order to subject the land to the payment of a judgment against *one* person who has died before execution—the whole estate, real and personal, being in the hands of the executor and administrator, subject to all debts. Until the debts are all paid, and the surplus, if any, distributed, a resort to the heir is not only useless, but impossible, for up to that time the land is in the hands or possession of the administrator. The land remains assets in the hands of the administrator until all the debts are paid and the administration closed. It is little short of absurd to say that during the administration, and before the debts are paid, that the same land is subject to the same debts in the hands of the heir. Lands cannot constitute assets in the hands of different persons at the same time.

It will be noticed also, that in the above extracts from Saunders' Reps. in relation to cases where there are several defendants, and one dies, that the reason why the *scire facias* is allowed against the heirs, is because " the *charge upon the judgment survives as to the personalty, though not to the realty.*" Therefore, in cases where the personalty of the survivors may be insufficient, in the apprehension of the plaintiff, he may have *scire facias* against the heir to compel him to " show cause why plaintiff should not have execution of a moiety of the lands of the deceased, without mentioning any goods." The goods are not mentioned, because not in the hands of the heir. Now, I say, that this reason for pursuing the heir does not exist in this State, under our system. " The charge upon the judgment," to use the language of the book, survives as to the *realty* as well as to the personalty, in this State. " Since the charge upon the judgment" *does* survive as to the realty, the plaintiff may *not* have a *scire facias* against the heir. He has no use for such a remedy, or any other, even in equity, until it shall appear that he has exhausted all the real and personal estate of the survivors. In the case before the Court, the survivors have not been pursued at all, as they might have been, according to the case cited on the other side from 1 Cowen's Reports. " At the common law, the charge upon the judgment being personal, " survived; so that where there are two or more defendants in a " personal action, and one dies after judgment, execution may issue " against the survivor, without a *scire facias*. The execution, how-

24

" ever, must be taken out against all the defendants, otherwise it will
" not be warranted by the judgment. 1 Lord Raymond, 224. 2
" Tidd., 10, 29. The reason given is, there is no alteration of the
" record, nor any new party made liable to the execution."

If the plaintiff should fail to realize his judgment from the survivors,
upon the execution so issued against them, it would then be time
enough to inquire whether any remedy existed against the estate of
the deceased, by bill in equity or otherwise. It may be true, that
the death of one of several persons, against whom a judgment at law
has been obtained, totally extinguishes the same as to him, and cer-
tainly is so, I apprehend, if the position of the counsel be correct,
that his death destroys all right to collect the same out of the personal
estate. This is obvious, because our statute requires all the debts
of intestates to be paid out of the personal property, if there be suffi-
cient for the purpose, allowing the land to be resorted to only in the
event of a deficiency of personal property. This most wise and im-
portant principle of our law would be repealed in every instance in
which a judgment like the present should exist. Now, if the British
statute of 2 West. does allow the remedy in that country, which the
plaintiff has pursued in this instance, I think it manifest that the same
is inconsistent with our statute, which directly prohibits a resort to
the land in any case until the personalty is exhausted, and therefore
the British statute must give way to our own. The first section of
the act of 1829, Thompson's Dig., 21, which declares what portions
of the statute and common law of England shall be of force in Flor-
ida, has this proviso : "The said statute and common law to be not
*inconsistent* with the constitution and laws of the United States, and
the acts of the General Assembly of this State." The principle and
reason of the position assumed by the plaintiff in this case, seems to
be totally inconsistent with the principles and reason of our system.
It is plain that the right to resort to the heir in any case in England,
resulted from the fact that the land could not otherwise be applied,
to any extent whatever, towards the satisfaction of any debt of an
intestate. It is also equally plain, that the land descended to the
heir or oldest son directly, and never constituted assets in the hands
of the administrator of the deceased, solely in consequence of a fun-
damental principle of the British Government, to wit, the preserva-
tion of a wealthy landed aristocracy. "When the Emperors," says

Blackstone, 2 Com., 183, " began to create honorary feuds, or titles of nobility, it was found necessary, (in order to preserve their dignity,) to make them impartible, or (as they styled them,) *feuda individua*, and in consequence descendible to the eldest son alone."

If this proceeding can now be sustained, it could be in any case, even before an administrator could be appointed to represent a deceased person's estate, and thus subject the land to sale, although there be sufficient personalty to pay the judgment, and when there was no one authorized to use it for that purpose.   This monstrous consequence of the principle contended for on the other side, forcibly illustrates the danger to our whole system of legislation on this subject, by adopting one of the incidents of a principle of the British system totally repugnant to our own.   When we repudiate the principle, we must also the incident.   I beg to refer the Court to its own clear and forcible exposition of this subject, in case of Gilchrist vs. Filyau and wife, herein before cited.   Most of the reasoning in that case is equally applicable in this.

The 13th section of the act of 10th November, 1828, (Thompson's Digest, 444,) provides that " no action of debt shall be brought against any executor or administrator, or other person having charge of the estate of a testator or intestate, upon a judgment obtained against his testator or intestate ; nor shall any *scire facias* be issued against any executor and administrator, or other person having charge of the estate as aforesaid, to revive such judgment, after the expiration of five years from the qualification of his executor or administrator, or such other person having charge of the estate ; and all such judgments, after the expiration of five years, upon which no proceeding shall have been had, shall be deemed to have been paid and discharged."

The first reflection upon this statute is, that it clearly contemplates the enforcement of judgments rendered in the life-time, against the executors and administrators of testators and intestates, and not against heirs or terretenants, unless they are embraced under the terms " or other person having charge of the estate."   If those terms do not embrace them, then they are not embraced, and I think they are not, from the fact that the *scire facias* here spoken of is to *revive* the judgment, and not to have execution of the land, as is here attempted.   The case cited on the other side from Alabama Reports,

seems to be relevant only in this, that, where a particular mode of collecting or enforcing a judgment is pointed out by our statute, the same must be pursued in all cases.   It will be seen that there is no exception in this statute embracing judgments, or allowing them to be enforced against any one else than the representative of the estate. We have already seen why a *scire facias* in England against the heir was allowed, namely, that the lands of the survivors were not subject to the judgment, which is different in this State ; and, therefore, there exists no shadow of reason for making any distinction in this respect between joint and separate judgments—for in each case, whatever is to be paid, is to be paid out of the land, in default of sufficient personalty.

The counsel on the other side say they must resort to the land, because they say they have no right to the personal effects.   Now it seems plain that, if they were right in this, it would follow that they have proceeded against the wrong party.   We have already seen that, until all the debts are paid, and the administration closed by final distribution, the lands remain in the hands of the executor or administrator.   The tenants in possession of the land hold under the executor or administrator ; for, as this Court remark in the case of Gilchrist vs. Filyau, " The rents and profits of the land constitute " a fund for the payment of creditors, and as they must by our laws " look to the executor or administrator for payment of their demands, " how could that fund be made available, unless the estate from " which it springs be made amenable for the debts ? and the law " points out the mode in which it is to be accomplished.   The rents " and profits are incident to the land, and it is obvious that the law " intended the whole estate to be subject to the payment of the " debts."   2 Florida Reports, 97.

This construction of our statutes, seems to amount to a very positive adjudication, that all creditors must look to the executors or administrators for payment of their demands, from which it follows that if the plaintiff has any debt at all, he must enforce the same against the person upon whom the law has cast the whole estate, real and personal, for the purpose of paying debts.   It is equally plain, that if the plaintiff has any existing debt, on account of the judgment against the deceased, it is the debt of the estate, and not that of the heirs or tenants.   If the plaintiff is correct in saying that he has no remedy

against the executor of the deceased, it is plain that he has none whatever, from the nature of the thing, and the decision above quoted.

2. If the plaintiff's judgment against the deceased was extinguished by his death, as is, I think, virtually admitted by the plaintiff's counsel, and as is very probable, then the Court need not inquire into the second question raised in this record, viz : that the judgment as to Powell "*shall be deemed to be paid and discharged,*" because no proceedings were had on said judgment within five years from the appointment of the executor in this case. But, because the Court may choose to consider this point, I will make ⸴a few suggestions. This language seems to imply something more than an ordinary statute of limitations to the remedy, and much more than a mere presumption of payment arising from the lapse of time, which might be rebutted by proof, as recognized in equity. Webster defines the word *deem* to mean " to think, to judge, to be of opinion, to conclude on consideration," &c. "*Deemed*—thought, judged, supposed." This judgment, then, is by the Court to be " thought, supposed, judged," and " concluded on consideration," " to be paid and *discharged ;*" or in the language of Webster in defining the latter word, " paid, released, acquitted, performed, executed." This statute must be " regarded as one of repose, and specifying a period after which litigation must cease," as remarked by this Court in the case above cited.

I will only remark, in conclusion, that the formal objection taken to the plea of this statute, namely, that it does not aver that no proceedings were had on said judgment until the suing out of this *scire facias*, is untenable. This fact abundantly appears from the judgment itself, the writ of *scire facias*, and the declaration of the plaintiff. If a writ of execution had been issued against the survivors, as I have shown was proper, there would have been no particular sense in calling on them by this writ to show cause why one should not issue.

I think, upon a review of the whole question, this Court must confirm the judgment of the Court below, and thereby give symmetry and consistency to our statute-system of settling up estates of deceased persons, and of paying " all debts of whatsoever nature."

*L. A. Thompson,* in reply, contended :

I. That the section 13 of the act of November 10, 1828, on which the plea is framed, applies only to executors or administrators, or

others acting in a like fiduciary capacity, in the charge or care of the estate of any testator or intestate, and cannot be pleaded by heirs or terretenants.

The phrase, " or other person in charge of the estate," is clearly not intended to include heirs and terretenants—for they are not in charge of the *estate* of the testator or intestate, but they are in possession, and claim as owners and proprietors, although the lands may be subject to liens created or suffered by the former proprietor.

The defendants cannot claim the bar as one given them, nor as coming within the relative and generic meaning of the terms used in the statute.

II. That they cannot claim the benefit of the bar derivatively, through the executor or administrator—because to do this, it must be on some demand which is a charge on the proper fund committed to the executor, and this judgment is not such a demand.

The law of Florida gives the personalty to the executor or administrator as a fund to pay debts with ; and if the same be insufficient, it authorizes a condemnation of the real estate to supply the deficit. Thomp. Dig., 202, 203, Sect. 6 & 7.   Gilchrist vs. Filyau, 2 Fla. R., 94.

It is assumed as incontrovertible, that the executor cannot proceed to condemnation of real estate to pay a debt which is not chargeable upon the primary fund in his hands.   The law directs him to pay from the personal property which goes to him, using the slaves last, and if this is insufficient, then to condemn the realty by the judgment of a Court, convert it into personalty, and apply it.   Surely, then, no Court would grant the prayer of the petition to pay a debt, if that debt did not constitute a charge upon his peculiar and proper fund, or had been barred by the statute of non-claim.

The judgment on which this writ is procured, did not form a charge upon the personalty of the deceased, but being joint against the testator and other persons, it survived against the lands and personalty of the survivors, and against the lands of the deceased only.   2 Tidd Pr., (9th ed.,) 1122.   2 Wms. Saund., 51, n. 4.   Woodcock vs. Bennet, 1 Cowen R., 738.   Erwin vs. Dundas, 4 How. S. C. R., 77.   Panton vs. Hall, Carthew, 105.

It is supposed that our statute differs from the common law, as to

what are charges upon the fund in the hands of the executor and the mode of administration. This is an error. Our statute only directs the order in which debts are to be paid, and like the common law,. makes all debts, whether due by record, specialty, or simple con- tract, payable out of the personalty. If it is not so provided in ex-- press terms, it results by necessary implication.

The provisions of the common law on this subject, will be found in 2' Wms. on Executors, 651–2, 656, 666, 674.

The personalty of the deceased being discharged, and his lands only remaining chargeable, the object of this proceeding is to enforce the lien given by the act of February 12, 1834, Thomp. Dig., 351,. upon those lands in the hands of the heirs and terretenants.

It is conceded, that if this claim was a charge upon the fund com- mitted to the administrator, that is, the personalty, and the bar had attached, then, as in the case of the statute of non-claim, these parties could claim the benefit of it derivatively; this, however, is the very position which we deny. It would have been an act of mal-admin- istration in him, if he had paid it.

DOUGLAS, C. J.

This is a proceeding by *scire facias* issued out of the Circuit Court of Leon County against the heirs and terretenants of Jeremiah Powell,. deceased, upon a judgment obtained by the Plaintiff in the Superior Court of Leon County at its November Term, A. D. 1838, against John Westcott, Jr., George W. Fletcher, William S. Paulin, James D. Westcott, Jr., and Jeremiah Powell, for the sum of $1783 50— 100; &c. Since which time (as appears by the declaration herein filed,. which is in the usual form,) the said Jeremiah Powell has de- parted this life. The defendants put in a number of pleas to this declaration, one only of which, however, is presented for our con- sideration..

That plea alleges that " heretofore, to wit, on the 15th day of Jan- uary, A. D. 1840, in the County of Leon, aforesaid,. Violet Powell, Nathaniel Hamlin, and John W. Adams, duly qualified as executrix and executors of the last will and testament of Jeremiah Powell, de- ceased,. and letters testamentary were thereupon issued to the said Violet Powell, Nathaniel Hamlin, and John W. Adams, by the Judge of the County Court of said County of. Leon, sitting as a. Court of

Probate, and that the said *scire facias* was not sued out by said plaintiff within five years next after the said Violet Powell, Nathaniel Hamlin, and John W. Adams, qualified as executrix and executors of the said last will and testament of the said Jeremiah Powell, as aforesaid, and this," &c. &c.

To this plea, the plaintiff filed a demurrer, to which there was a joinder, and after argument had thereon, it was considered and adjudged by the Court, that the said demurrer be overruled, and that the plaintiff take nothing by his bill, &c.

The first question presented for our consideration according to the course of the argument at the hearing of this cause, is, whether this plea, as pleaded, is a bar to the action. It is urged in a printed argument (which is now before us,) and which does much credit to the gentleman who prepared it, that the plea is insufficient. It is based upon the act of November 10th, 1828, Thompson's Digest, page 444, sec. 3, no. 2, which says, "no action of debt shall be brought against any executor or administrator, or other person having charge of the estate of a testator or intestate, upon any judgment obtained against his testator or intestate, nor shall any *scire facias* be issued against any executor or administrator or other person having charge of the estate as aforesaid, to revive such judgment, after the expiration of five years from the qualification of such executor or administrator, or of such other person having charge of the estate, and all such judgments, after the expiration of five years, upon which no proceeding shall have been had, shall be deemed to have been paid and discharged, saving," &c. "The plea, (it is insisted) should have stated not only that five years had elapsed from the qualification of said executrix and executors to the suing out of the said *scire facias*, but that, no proceeding had been had upon said judgment within that time."

The general rule in pleading laid down by Chitty, vol. 1, page 229, is in these words : "In pleading upon statutes, where there is an exception in the enacting clause, the plaintiff must show that the defendant is not within the exception ; but if there be an exception in a subsequent clause, *that* is matter of defence, and the other party must show it, to exempt himself from the penalty." The same principle is laid down in 5 Bac. Ala., title Statute L. 1 East., 646, in note. Rex vs. Pratten, 6 Term Reps., 559.

But the case at bar does not seem to come within this rule. The peculiar provision of our statute seems to render it necessary that the plaintiff should, by his declaration, show that some proceedings have been had on the judgment within the five years, and that those proceedings have been unavailable, in part at least; otherwise he will show that he is proceeding on a judgment that has in fact been paid, or that in law is deemed to have been paid and discharged. For instance, in this very case, the plaintiff sets out in the declaration the record of the judgment in the Court below, rendered on the 9th day of November, A. D., 1838, more than seven years before the commencement of this suit, which was not instituted until more than six years had elapsed after the said Violet Powell, Nathaniel Hamlin and John W. Adams, had been duly qualified as executrix and executors of the last will and testament of the said Jeremiah Powell, deceased. If any proceedings were had upon that judgment in the meantime, they form a part of the record, and should appear in it; as no such proceedings appear by the record to be had in five years after the qualification of the said executrix and executors, as set forth in the plea we are considering, or before the commencement of this suit, and none are alleged in the declaration to have taken place, it is to be presumed that none were had, and the law, therefore, decrees the judgment to have been paid and satisfied. The words of the statute are—" Shall be deemed to have been paid and discharged," saving, &c. The word " discharged," as defined by Webster, in his Dictionary Ed. of 1848, page 339,) means " paid, released, acquitted, freed from debt, performed, executed." The plaintiff, therefore, is endeavoring to recover a debt, which, according to his own showing, appears to have no existence. He might have relieved himself from this dilemma, by showing (if the fact were so) that a *fieri facias* had been issued on this judgment, and returned *nulla bona*, or only in part satisfied ; or that other proceedings were had, if any had been had ; this would have placed him *rectus in curia*. As it is, he seems to have no standing in court. This case, too, appears to come within another rule of pleading, viz : that matter which comes more properly from the plaintiff, need not be stated in the plea. Griswold vs. National Ins. Co., 3 Cowen, 96. But it is contended that the law does not absolutely require that *scire facias* should be sued out against executors or administrators within five

years; it is admitted, however, that it must be done, or some proceeding had upon the judgment, in order to do away the presumption of payment.

Another important question arises in this case—one which the learned counsel for the plaintiff seemed to consider as decisive of the one we have discussed, which is this: " Could the executrix and executors of Powell have been properly made defendants to this *scire facias ?*" " If they could, then it is admitted that the above statute of limitations may have been correctly pleaded in bar of this action." The argument is, that " the judgment upon which this *scire facias* issued, was founded upon a joint contract—it was a joint judgment; and in case of a joint contract, if one of the parties die, his executor or administrator is at law discharged from liability, and the survivors can alone be sued; and if the executor be sued, he can either plead the survivorship in bar, or give it in evidence under the general issue." " If the contracts were several, or joint and several, the executor of the deceased may be sued at law in a separate action, but he cannot be sued jointly with the survivor, because one is to be charged *de bonis testatoris*, the other *de bonis propriis.*" And 1st Chitty's Pleadings, page 50, and note 4, is cited as conclusive of this case; and were it not for several provisions of our statutes, which have an important bearing on this question, we might, perhaps, so consider it, although we do not very clearly perceive the soundness of the distinction contained in the latter proposition—" because one is to be charged *de bonis testatoris,* and the other *de bonis propriis ;* for we find it expressly laid down by the law of England, " that when judgment is against several defendants, and one of them dies before execution, since the charge of the judgment survives as to the personalty, though not as to the realty, the plaintiff may have *scire facias* framed upon the special matter, viz: against the survivor, to show cause why the plaintiff should not have execution against him of his goods and chattels, and a moiety of his lands, and against the heirs and terretenants of the deceased, to show cause why the plaintiff should not have execution of the moiety of the lands of the deceased, without mentioning goods." Underhill vs. Deveraux, 2 Saund. Rep., 72—citing Panton vs. Hall, which was decided by Lord Holt, in Trin. Term, 1st Will & M., Carthew's Reps., 105, in which, it seems, this doctrine was first held; and if a *scire facias*

might be framed upon the special matter in such a case, we are at a loss to see why the same thing might not be done, if, by the provisions of the law, the executors or administrators ought to be made parties with the survivors, or the heirs and terretenants of the deceased, or both.   In 2 Tidd's Pr., 1120, it is said, that " where there were two or more defendants, and one of them died after judgment, and before execution, it was formerly holden, that the plaintiff was put to his *scire facias* against the personal representatives of the deceased; and Yelverton, 208, is cited.   In turning to the case of Spencer and Woodward vs. The Earl of Rutland, which is the case referred to, we find it laid down, *per totam curiam,* Yelverton Justice, " that, although the writ of error is but to discharge the plaintiff, yet, if the judgment be affirmed, the charge will fall on the executor of him that is dead, and does not survive to the other ; and, therefore, the executor of Woodward must be made party, that he may plead in salvation of the testator's goods."

Now, although this case seems to have been overruled by Lord Holt, in the case cited from Carthew, yet, we shall see by and by, that it has a bearing upon this case.   And in a note to the case of Trethewy vs. Ackland, and Green vs. same, 2 Saund. Reps., 67, it is said, " at common law, the plaintiff might take the goods of the survivor in execution by a *fieri facias*.   But under the statute of Westminster 2, he must sue out an *elegit* against the lands of the survivor, and also of the heir and terretenants of the deceased, and must sue out a *scire facias* against the survivor, and the heir and terretenants of the deceased.   For it seems that where the lands of several are charged with a debt, it shall not lie wholly upon the survivor, as if a recognizance be acknowledged by several, the lands of all are thereby become chargeable, and execution must be equally made, and if one dies, the creditor must bring a *scire facias* against his heirs and terretenants and also against the survivors.   But it is otherwise, where the lands are not bound, as if two enter into a bond and one dies before judgment, the survivor shall be charged," citing Lompton vs. Callingwood, 4 Mad., 315.   So, where judgment in debt was had against two, one died, the plaintiff brought *scire facias* against the survivor only ; the defendant pleaded that the other had left lands and an heir upon whom they had descended, and demanded judgment if he should be compelled to answer, without the heir

being warned. To which the plaintiff demurred, and judgment was given that the defendant should answer, for the judgment is against the person. And although by the statute of Westminster 2, which gives the *scire facias* and *elegit*, he may charge the lands and make the judgment real; yet it is at his election to proceed against the personalty if he will. But if he will take out execution upon the real lien, the charge must be equally against both. This proceeding against the moiety of the lands in the hands of the survivors, and the moiety in the hands of the heirs and terretenants originated under the statute of West., 2, 13 Edward 1st, which gave the *scire facias* and *elegit*, and enabled the plaintiff to *extend* half the lands of each of the parties defendant until the debt was paid.

Our statute gives a more extended remedy, by providing that lands and tenements (as well as) goods and chattels, shall be subject to the payment of debts, and shall be liable to be taken in execution and sold. Thompson's Digest, page 355, sec. 2, no. 1; and therefore it is contended, as in England, the plaintiff in *scire facias* was entitled to proceed against half the land, he may here have execution of the whole. This question depends entirely upon the provisions of our own statute. The 18th chapter of 13 Edward 1st, which gives the *elegit*, is not in force in this State, because it is inconsistent with divers provisions of the acts of our General Assembly, and especially those which provide for the sale of land on execution. But the 45th chapter, which gives the writ of *scire facias, is* in force here by virtue of the provisions of the act of November 6, 1829, which adopts the common and statute laws of England which are of a general and not a local nature, with certain exceptions and provisoes. See Thompson's Digest, page 21, sec. 1, no. 2. The act of 12th February, 1834, ibid., page 350, 357, sec. 4, no. 1, declares, that " every judgment at law and decree in equity which shall be entered and pronounced in any of the Courts of this State, shall create a lien and be binding upon the real estate of the defendant or defendants." How far this provision applies to judgments rendered against executors or administrators, it is not necessary now to determine. The difference between the effect of a judgment in England under the statute of *elegit*, and a judgment or decree rendered in this State under our statute, was noticed by the Court in the case of Moseley vs. Edwards, at the last term, 2 Flor. Reps., 434. Under

the former, the lien did not attach until the writ was issued and levied; it then had relation back and cut out all intermediate incumbrances, and remained a lien until the debt was discharged. Our statute, by the natural import of its terms, makes a judgment at law or decree in equity, a lien upon the lands of the debtor, which binds from its rendition. It is not supposed that the death of a defendant destroys this lien, as remarked in the case of Fillyau and wife vs. Laverty, decided at the present term. We see no good reason why the death of a defendant should make the plaintiff's condition any worse than it was before; his lien continues, but he may lose it by his *laches*. " All debts and demands of whatsoever nature against the estate of any testator or intestate, which shall not be exhibited in two years, shall be forever barred; provided, that the executor or administrator shall, by advertisement to be published once a week for the space of four weeks, in some newspaper printed in this State, give notice to all persons having claims or demands against the estate, that their claims and demands will be barred at the expiration of the period aforesaid, unless exhibited within the same." Thomp. Dig., page 206, no. 6. A party who claims a debt against an estate by virtue of a judgment, and does not exhibit it to the executor or administrator within that time, renders himself liable to have the bar of *non claim* set up against him. So, if he lets his judgment stand five years after the qualification of the executors or administrators, or other person having charge of the estate, without any proceedings being had upon it, he renders himself liable to a plea of the statute, and may lose the benefit of his lien. If his lien continues, the question is, how is that right to be enforced in such a case as this? Were it not a joint judgment upon a joint contract, the case would be attended with less embarrassment; being such a judgment on such a contract, it is by no means clear of difficulty. Our statute provides that real estate shall be considered assets in the hands of executors and administrators. Duval's Comp., 186, Thomp. Dig., page 202, sec. 7, no. 2.

In England, on *scire facias* to heirs and terretenants, the executor and administrator was not made a party, because, according to the ruling of Lord Holt, in Panton vs. Hall, above cited, which has ever since been followed, the personalty surviving, the remedy to recover it must survive; but the remedy against the lands could only be

against the survivor, and the heirs and terretenants of the deceased, and not against his personal representative. The reporter in that case, says, "that all the personal charge shall survive against John Hall alone, was agreed on all sides," (though the authorities in the margin are quite the contrary,) citing Yelv., 208, and other authorities. There the lands are not assets in the hands of executors and administrators for the payment of debts, but descended to the heir or eldest son, upon the principle of primogeniture. "When the Emperors, (says Sir William Blackstone, 2 Commentary, 183,) began to create honorary feuds or titles of nobility, it was found necessary (in order to preserve their dignity) to make them impartible, or (as they styled them) *feuda individua,* and in consequence descendible to the eldest son alone." Here all "the real estate is to be considered assets in the hands of executors or administrators—assets, *sub modo* or conditional assets. Gilchrist, Judge, &c., vs. Fillyau and wife, 2 Flor. Reps., 99. They are assets for the payment of debts in all cases where the personal estate is exhausted, and may become so before. The act of 17th February, 1833, sec. 4, Duval Comp., 137, Thomp. Dig., 203, no. 3, enacts "that the Judge of Probate or officer discharging the functions of ordinary, may order and decree a sale (in like manner as to supply the deficiency of personal assets) of the real estate of any deceased person, in preference to a sale of slaves where it may be necessary for the payment of just and lawful debts, or demands against his estate, and when it may be deemed most beneficial to the heirs, legal representatives or devisees of the estate." The act of March 4, 1841, Thomp. Dig., 203, 204, no. 6, declares "that it shall be lawful for any administrator of any deceased intestate, or the executor of any deceased testator, who has not power by the will of the testator, to sell real estate for the purpose of paying debts, or to make more equal distribution amongst the heirs or devisees or legatees, to file a petition in the Circuit Court of the County in which the letters of administration or letters testamentary were granted, &c., for the sale of the real estate." This act is set forth, and the views of this Court so fully expressed upon it in Gilchrist, Judge, &c., vs. Fillyau and wife, above cited, 2 Florida Reps., 96 to 100, that it is deemed unnecessary to enlarge upon it here. This Court, in that case, held that it did not repeal the act of 1833, further than changing the mode by which executors and ad-

ministrators, were enabled to sell real estate for the payment of debts where there is a deficiency of personal assets ; on the contrary, that the law of 1841, is a virtual affirmance of that of 1833, which asserts that lands shall be assets ; indeed its provisions as there held, are more extensive, as it enables an executor or administrator, to sell real estate to make more equal distribution, &c. It is clearly the duty of the executor or administrator, in case there should be a failure of personal assets, to make application for the sale of lands in the mode pointed out. It is not a matter with him (said the Court), of mere discretion ; being assets, they must carry with them the incidents of assets ; the rents and profits of the land constitute a fund for the payment of creditors, and it is obvious that the law intended that the whole estate should be subject to the payment of debts. 2 Flor. Reps., 97. Upon the death of the ancestor, the fee vests in the heir by our statute of descents, but he takes it subject to the debts of the testator or intestate. If the testator or intestate has entered into any written agreement or contract for the conveyance of real estate (in this State) the executor or administrator, (and not the heir) is by statute authorized and empowered to execute such conveyance.

Had the law in these respects been the same in England that it is here, we think that the ruling of the Courts there would, in a case like this, have been different. They hold that where any new person is either to be better or worse by the execution, there must be a *scire facias,* because he is a stranger, to make him a party to the judgment. As in the case of an executor or administrator, Pennyoir vs. Brace, 1 Salk., 319, 1 Lord Raymond, 244, Holt, Ch. J., held that a *capias,* or *fieri facias,* being in the personalty, might survive, and might be sued against the survivors, without a *scire facias ;* otherwise of an *elegit,* for there the heir is to be contributary. Ibid—citing 2 Inst., 471. Dyer, 175. Mad. Cases, 138, and 4 Mad. 404.

Now, an executor or administrator should be made a party to a *scire facias* here, for the same reason, viz : because he is contributary, and he is a new person, a stranger to the judgment, and to be better or worse by the execution ; and it is laid down as a general rule, that, in all cases where the inheritance or freehold is affected, the tenant of the freehold is to be made a party. 8 Bac. Abr. Ed., 1848, page 612. Yelverton says, (page 209,) " the executor must be

made a party, that he may plead in salvation of the testator's goods."
Is it not quite as important that he should have an opportunity to
plead in salvation of the testator's lands, where they fall into his
hands as assets ?—assets for the payment of debts, and it may be for
distribution?   He cannot plead *plene administravit*, until the real, as
well as personal, assets have been exhausted ; he *is required to* pay
all the debts of the estate, which are fairly and justly due, and the
order in which they are to be paid is prescribed.   First—The ne-
cessary funeral expenses ; debts due for board and lodging, during
the last sickness of the deceased ; next physicians' and surgeons'
bills, and debts incurred for nursing and other attendance, and for
medicines by an apothecary, during the last sickness of the deceased ;
next judgments of record, rendered and docketed in this State in the
life-time of the deceased, and all debts due the State ; and, finally,
all other debts, whether by specialty or otherwise, without distinc-
tion of rank.   Thomp. Dig., page 206, No. 3 & 4.   Duval's Com-
pilation, 175, 186.   The lands are, therefore, assets in the hands of
the executors, for the payment of this very judgment, if it has not
been paid, or is not by law deemed to be paid, and is not otherwise
barred ; and if the personal assets in their hands cannot be reached
in this case, because, as contended, the judgment does not survive as
to them—yet it does, by the rules of the English laws; survive as to
the realty ; and these executors, standing in the place of the heirs
in that regard, so far as the debts due by the estate are concerned,
they should have been made parties to this *scire facias*, and had an
opportunity to plead in salvation of these lands.

Whether it was necessary that the heirs and terretenants should
have been made parties or not, may be more questionable ; it may
be proper to remark here, that if these lands can be considered as-
sets in their hands for the payment of this debt, then they are per-
sons, other than executors, in charge of the estate, and are properly
made parties to this proceeding ; but if the lands are not assets in
their hands for the payment of the debt, then the *scire facias* will
not lie against them.   We have seen, that if " they have the estate
itself," as is contended, it is subject to the payment of this debt, and
the executors hold it as assets for that purpose, and have a right to
the rents and profits ; they hold it not only for the payment of this
debt in particular, but for the payment of all the debts of the testa-

tor, which were due or owing at his death, and not yet paid, or barred by any statute of limitation, and the heirs, so far as they are in charge of it, hold it for the same purpose.

In the case of Reynolds, administrator, et al., vs. Henderson, administrator, 2 Gilman's Reps., 118, which was a *scire facias* against the heirs, terretenants and administrator, to enforce the payment of a judgment rendered against the intestate in his life-time, where the question of lien arose as here, service was upon all, and held regular, and we so consider it in this case.

In the case of Bell and others, vs. The Heirs of Robinson, 1st Stewart's Reps., 193, 195, the Chief Justice, delivering the opinion of the Court, said : " Our statute of 1812 gives to judgments and decrees a lien on the lands and tenements, &c., and directs that the clerk shall frame the execution accordingly." The Clerks of our Courts, without any such express direction by statute, have framed an execution to meet the provisions of our statutes, which subject lands to levy and sale on execution, and this is in accordance with a rule of law as old as the institution of a Court of Chancery, that where a case arose, and there was no writ to suit it, the Clerks in Chancery should frame one.

We do not, therefore, perceive any insuperable difficulty, were it necessary in such a case as this, again to change the form of the execution, so as to make it reach either the real or personal, or both, in the hands of an executor or administrator.

We are not so strongly attached to technical rules, as to be unwilling to overturn them, when they stand in the way of the administration of substantial justice ; and our statutes have opened a way for us to do so. Whether, however, such a change in the process may be necessary, or can be made, we shall leave to be decided when a proper case shall arise, and the question shall be directly presented.

From the view we have taken of this case, we consider the plea a good bar to the action ; but were it otherwise, we should feel constrained to act in consonance with the rule, that, upon demurrer, the Court will give judgment for the party, who on the whole case appears to be entitled to it, and against the party who committed the first error. Egberts vs. Dibble, 3 McClean's Reps., 86. Greathouse vs. Dunlap, Ibid, 303. Rosenberg vs. McKaine, 3 Rich.

26

Reps., 145. Parkhill vs. The Union Bank, 1 Florida Rep., 131. Stephen on Pl., 144. 1 Chitty's Pl., 707, and authorities there cited in note 1096 ; and for the reasons above stated, adjudge the declaration bad.

The judgment of the Court below is, therefore, affirmed, with costs.

*Per curiam.*